UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

CIVIL ACTION NO. 08-52-GWU

ROBERT C. REYNOLDS,                                                              PLAINTIFF,

VS.                              **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                         DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Disability Insurance Benefits (DIB).  The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled.  If no, proceed to Step 2.  See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)?  If yes, proceed to Step 3.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities?  If yes, proceed to Step 4.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

08-52 Robert C. Reynolds

    4.    Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

    5.    Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

    6.    Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

    7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

    Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the

08-52 Robert C. Reynolds

alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

08-52  Robert C. Reynolds

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert

accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Robert C. Reynolds, who was 59 years old at the time he filed his application in June, 2004 and 61 years old at the time an Administrative Law Judge (ALJ) issued a final decision in his case on July 27, 2006, was found by the ALJ to have "severe" impairments consisting of morbid obesity, shortness of breath, degenerative disc pathology, arthritis of the lumbar spine and hips, hypertension, and dilated cardiomyopathy. (Tr. 18). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Reynolds had acquired skills which would transfer to other jobs at the light and sedentary levels of exertion, and therefore was not entitled to benefits.  (Tr. 25-7).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person in the "age bracket" of "50 to 60- plus," with a college degree, a master's degree in management accounting and a Ph.D. in labor and industrial relations and work experience as a labor organizer, staff representative, and "weigh clerk" could perform any jobs if he were capable of "light" level exertion, with the ability to stand four hours in an eight-hour day (no more than one hour without interruption), to perform no prolonged walking of greater than 15 to 20 minutes, and to sit five to six hours in an eight-hour day (no more than two hours without interruption), and also

had the following non-exertional restrictions. He: (1) could never push or pull with his lower extremities; (2) could perform no sustained or frequent overhead work; (3) could not climb hills or slopes or work on uneven terrain; (4) could not climb high ladders or work at unprotected heights; (5) could not perform a "prolonged or full squat or crawl;" (6) could occasionally bend, stoop, balance, kneel, and crouch; (7) could perform no work in the vicinity of heavy moving machinery or otherwise be exposed to excessive floor vibrations; (8) could not operate mobile equipment or do commercial driving or otherwise be exposed to jarring, jostling, or jolting; (9) could occasionally operate foot pedal controlled equipment; (10) could not be exposed to excessive air pollutants, pulmonary irritants or allergens, be exposed to extreme cold temperatures, or work in damp or humid conditions; (11) must be permitted to wear corrective eyeglasses as desired; and (12) must be permitted to wear protective hearing devices or hearing aids as appropriate. (Tr. 361-3). The VE responded that at the light level, the plaintiff possessed skills that would transfer to certain other weigh clerk jobs, but would not transfer to any other light work. (Tr. 365). She went on to state that there would be some transferable skills to sedentary work, such as semi-skilled bookkeeping clerk and payroll clerk. (Id.). She also cited an unskilled job, shipping and receiving clerk. (Id.).

  On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

As an initial matter, the Commissioner's regulations make a distinction between persons who are of "advanced age" (55 or older) and persons who are "closely approaching retirement age" (60-64).  20 C.F.R. § 404.1568(d)(4) provides that a claimant who is of advanced age (but has not attained age 60) who has a severe impairment or impairments that limits him to no more than light work can be found not disabled if the Social Security Administration finds that he has skills that are transferable to skilled or semi-skilled light work.  The ALJ made such a finding in the present case, and it is supported by the VE's testimony.

The regulations go on to state, however, that a person age 60 to 64 who is limited to no more than light work will be found to have skills that are transferable to skilled or semi-skilled light work "only if the light work is so similar to your previous work that you would need to make little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry."  Burton v. Secretary of Health and Human Services, 893 F.2d 821, 824 (6th Cir. 1990).  In the present case, a specific finding regarding vocational adjustment was not made.  Although the job of "weigh clerk" might be in the same industry and require similar tools and work processes, there is no evidence to this effect.  Moreover, the VE testified that there were only 1,200 such jobs in the three-state area of Kentucky, West Virginia and Ohio, and 20,000 such jobs nationally, making it questionable whether the job exists in significant numbers.  Including the sedentary level jobs of bookkeeper and payroll clerk to which the plaintiff could transfer his skills would certainly provide a

08-52 Robert C. Reynolds

significant number of jobs, but it is even less clear that these jobs would require little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry, as required by the regulations.[1]

Therefore, a remand will be required for further consideration of the plaintiff's status following his 60th birthday.[2]

Regarding the plaintiff's condition prior to age 60, he originally alleged disability due to severe sleep apnea, and oversized left heart ventricle, edema, incontinence, depression, and high blood pressure. (Tr. 63). At the administrative hearing, Mr. Reynolds testified that he had stopped working because of back pain; his job as a labor negotiator required him to travel and to climb up and down long flights of stairs while carrying large boxes of files. (Tr. 343-4, 346). He stated that he had originally injured his back after a fall in approximately 1966, and had back surgery approximately four years later. (Tr. 344-5). He had continually suffered from back pain since the mid-1960s, but it had become too severe for him to continue to work in 2004. (Tr. 346). He took a large amount of the pain medication Darvocet every day, but was never pain-free. (Tr. 345). He had also been

---

[1] Both the VE and the ALJ also cited the unskilled job of shipping and receiving clerk. By definition, a person does not require skills to perform an unskilled job. Without further explanation, this would appear to cast some doubt on the reliability of the VE's testimony.

[2] The exact date of the plaintiff's 60th birthday has been filed in a reference list under seal, pursuant to Fed. R. Civ. Proc. 5.2(g) and General Order No. 04-01.

diagnosed with congestive heart failure, for which he took medication but still had trouble with endurance in terms of walking and climbing stairs. (Tr. 346-7). In any case, physical activity made his back pain worse, and friends and family were telling him that the amount of pain medication he was taking was giving him trouble putting his thoughts together. (Tr. 350). He asserted that he had had a heart attack approximately seven years earlier, although a heart catheterization did not show any blockage. (Tr. 353). He had required prostate surgery in 1999, and gallbladder surgery in July, 2005. (Tr. 342). He described thoughts of suicide because of resulting trouble with impotence and incontinence, and asserted that he planned suicide almost every day. (Tr. 351). He was taking medication for depression from a family physician, but had only seen a psychiatrist for depression in 2004, and had not returned in over a year. (Tr. 357).

Regarding the allegation of depression, several office notes from Dr. Sid Shih, a psychiatrist, indicate that Mr. Reynolds was diagnosed with major depression, "rule out" bipolar disorder, and a history of alcohol dependence in remission in May, 2004. (Tr. 143-4). Dr. Shih assigned a Global Assessment of Functioning (GAF) score of 52, reflecting moderate difficulty in social, occupational, or school functioning. Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34. Dr. Shih prescribed medication and in July, 2004 the plaintiff reported that he was doing fairly well on Wellbutrin. (Tr. 141). He did not

return to Dr. Shih after September, 2004, and the psychiatrist did not provide any specific functional restrictions.

Mr. Reynolds was consultatively evaluated by Lori Smith-Ward, a licensed psychological associate, on September 21, 2004. (Tr. 145). He reported his main concerns as apathy regarding whether he lived or died, but said he had no intent to hurt himself, and also mentioned problems with impotence and incontinence. (Tr. 145-7). He stated that the medications he was receiving from Dr. Shih were effective. (Tr. 147). The psychologist diagnosed an adjustment disorder with depressed mood, and opined that he was not psychologically limited. (Tr. 150). State agency psychological reviewers concluded that the plaintiff did not have a "severe" impairment. (Tr. 152, 192).

Subsequently, the plaintiff was evaluated by another psychologist, Dr. Stuart Cooke, on April 6, 2006. Mr. Reynolds primarily described physical problems, but also said he had severe emotional problems and did not want to live. (Tr. 319-20). At first he indicated that the suicidal thoughts were because of physical pain but then said that it was not pain but impotence. (Tr. 321). He also noted problems with incontinence, and stated that he confined himself to his house to avoid embarrassment. (Id.). Mr. Reynolds reported that he needed no help taking care of his personal needs, and could do some household chores such as taking out the garbage and folding clothes. (Tr. 322). Dr. Cooke diagnosed a depressive disorder, and opined that Mr. Reynolds would have no less than a "limited but

08-52 Robert C. Reynolds

satisfactory" ability to make all occupational, performance, and personal-social adjustments. (Tr. 323-4, 326-8).

In the absence of any specific functional restrictions limiting the plaintiff's ability to work, the ALJ's conclusion that the plaintiff did not have a "severe" mental impairment is supported by substantial evidence. (Tr. 20).

The plaintiff argues that he should have been found disabled based on the Commissioner's Listing of Impairment regarding obesity. Counsel for the plaintiff cites a former Listing which would have provided that a person of Mr. Reynolds's height of 68 inches and weight of 316 pounds would have been presumed disabled if he had shown a history of pain and limitation of motion in any weight-bearing joint or the lumbosacral spine associated with findings on medically acceptable imaging techniques of arthritis in the affected joint or lumbosacral spine.[3] However, this Listing was repealed as of 1999, and, in any case, there are no x-rays or other medically acceptable imaging techniques which show arthritis, meaning that the plaintiff would not have met the Listing even if it were still in effect.

The fact that there are no lumbar x-rays or other studies is also a factor weighing against the plaintiff's other primary argument. Mr. Reynolds notes that his treating family physician, Dr. Brian Saltz, prepared a functional capacity form dated July 5, 2005 limiting him to less than full-time sitting or standing in addition to having

---

[3]See 20 C.F.R. Part 404, Subpt. P, Appendix 1, §9.09A (1998).

a number of severe postural and environmental restrictions, although many of these were accommodated in the ALJ's hypothetical question. (Tr. 239-43). Dr. Saltz cited lumbar disc disease and pulmonary disease as the reasons for the restrictions. However, his office notes contain few objective findings other than diffuse lumbosacral tenderness, weakly positive straight leg raising tests and decreased sensation. (E.g., Tr. 259). Although Dr. Saltz was willing to prescribe a long-acting pain medication containing Morphine, Mr. Reynolds refused to go to a pain clinic and stopped taking the pain medication of his own volition early in 2005. (Tr. 255). The office note closest in time to the residual functional capacity assessment, in fact, states that his pain was controlled. (Tr. 253). A consultative examination by Dr. Gary Wortz in January, 2006 showed some limitation in forward flexion and positive straight leg raising, but there was no spasm and no impairment in toe and heel walking. (Tr. 313). Dr. Wortz completed a functional capacity assessment which is consistent with the ALJ's hypothetical question. (Tr. 316-18).

Although the opinion of a treating physician is entitled to great weight if it is supported by sufficient signs, symptoms, and laboratory findings, see, e.g., Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985), in the present case, the objective findings by the treating physician were minimal and the laboratory tests were non-

08-52 Robert C. Reynolds

existent. The ALJ could reasonably have relied on the report of the only other examining source to give an opinion, Dr. Wortz.[4]

Accordingly, the administrative decision will be affirmed for the period of time prior to his 60th birthday, and remanded for further consideration for the period of time after that date. An appropriate order and judgment will be entered simultaneously with this opinion.

This the 16th day of January, 2009.

Signed By:

G. Wix Unthank

United States Senior Judge

---

[4] The plaintiff criticizes the ALJ's credibility finding regarding his testimony. The ALJ noted that Mr. Reynolds told Dr. Cooke that back pain was not his main problem. (Tr. 24). Counsel for the plaintiff asserts that the ALJ should have noted that the plaintiff had gone on to say that his impotence was his main problem, and that any man would rather have back pain than be impotent. Whether or not this is the case, the plaintiff had described his feelings about the issue to both of the psychological examiners, who did not consider the problem to be disabling. There were a number of inconsistencies regarding the plaintiff's description of his back pain, such as declining medication at one point, that could have caused the ALJ to question his credibility.

15